THE PEOPLE *ex rel.* VIRGINIA K. IRBY, Plaintiff-Appellee, v. GREGORY M. HOMYER, Defendant-Appellant.

Fifth District   No. 5—84—0150

Opinion filed July 19, 1985.—Rehearing denied August 21, 1985.

Strellis & Faulbaum, of Waterloo, for appellant.

Dick Allen, State's Attorney, of Edwardsville (Kenneth R. Boyle, Stephen E. Norris, and Susan M. Young, all of State's Attorneys Appellate Service Commission, of counsel), for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Defendant Gregory M. Homyer appeals from a judgment of the circuit court of Madison County finding defendant in wilful contempt of court for his failure to relinquish physical custody of his daughter, Heather Janel Irby, and return Heather to her mother, plaintiff Virginia K. Irby. The instant action was engendered by a complaint filed by plaintiff in November, 1979, alleging that defendant was the father of Heather, who was born out of wedlock. The parties subsequently agreed to submit to HLA blood tests, and to bind themselves by the test results. The tests were conducted and, on October 23, 1983, the court entered an order adjudging defendant as Heather's father. The order stated that the parties agreed upon a finding of defendant's paternity, and that such was the finding of the court. The order contained no directives regarding support or custody of the child.

On October 23, 1983, defendant took physical custody of the child and removed her to defendant's home in Nevada. On October 26, 1983, following a hearing on plaintiff's petition for temporary child support, child custody and injunctive relief, the court entered an order stating in part:

"The Court finds that custody is not an issue in a paternity action and that custody remains with the natural mother pending any proper motions filed pursuant to Ill. Rev. Stats. [sic], Ch. 40, par. 601. The Court further finds that defendant unlawfully took the child from the custody of the natural mother. The

defendant [is] ordered to return [the] child to the natural mother, Virginia Irby, within twenty-four hours (24) from the time of 10:00 a.m. today, said child to be returned by 10:00 a.m., October 27, 1983."

Defendant, on October 27, 1983, petitioned the District Court of the Eighth Judicial District of the State of Nevada for "temporary and permanent custody" of Heather, alleging that defendant had taken the child from plaintiff's residence after finding that Heather "was suffering from serious neglect." In an affidavit in support of his motion for temporary custody, defendant alleged that the child had been living in a state of "squalor and filth." Defendant described the conditions:

"The kitchen area was dirty and greasy. Dirt, pieces of food, tools, clothes, toys and miscellaneous trash were scattered over the floor. The odor of spoiled food permeated the living room and kitchen. The potty chair in the bathroom, used by the two (2) younger children, was full, and obviously, had not [been] emptied after each use. Spilled food, which was evident on one day when your Affiant visited, had not been cleaned up on the following day when he again visited the minor children in the house. The pajamas, which said minor child was wearing when your Affiant took said minor child from Respondent's house, had obviously been worn for many days since the last washing."

Joan Owen, Ph.D., a psychologist, also provided an affidavit. Dr. Owen stated that there was reason to believe the child may have been psychologically neglected by plaintiff, noting that Heather did not display the separation anxiety one would expect from a child so recently separated from her mother. On November 3, 1983, the district court in Nevada entered an order granting defendant custody of Heather "until the trial of this action." Plaintiff was granted reasonable rights of visitation. The court directed that Heather should not be removed from Nevada except upon mutual agreement of defendant and plaintiff.

On November 16, 1983, the circuit court of Madison County conducted a hearing for the purpose of enforcing its order of October 26, 1983. In an order entered the same day, the circuit court noted the order of the district court of Nevada granting temporary custody of Heather to defendant, but determined that the State of Nevada did not have jurisdiction pursuant to the Uniform Child Custody Act. The court declined to give full faith and credit to the order of the Nevada court, and found defendant in wilful contempt of court. Defendant

was sentenced to six months in the Madison County jail. Defendant was given the right to purge himself of contempt by returning Heather to plaintiff. Defendant was also ordered to pay attorney fees in the amount of $150. On February 1, 1984, the circuit court denied defendant's motion to reconsider the contempt order.

■ Defendant argues that the circuit court of Madison County was without authority to grant temporary custody of Heather to plaintiff, since defendant had already been adjudged the father of Heather, and plaintiff's complaint in the paternity action had not contained a prayer for custodial relief. We do not find the argument persuasive. A finding of paternity, absent any determination of support, is not deemed a final and appealable order. (*Virzint v. Beranek* (1980), 85 Ill. App. 3d 919, 922, 407 N.E.2d 701.) Section 9 of the Paternity Act (Ill. Rev. Stat. 1981, ch. 40, par. 1359) specifically requires the court, following a judgment of paternity, to "take evidence upon the requirements of the child for its support, maintenance, education and welfare, and upon the expenses of the mother during pregnancy, confinement and recovery, and for reasonable attorney's fees" and to enter an order with regard to the apportionment of these expenses. Since the trial court's order of September 23, 1983, adjudging defendant the father of Heather Janel Irby contained no provisions for the support of the child, the court retained jurisdiction of the case and, necessarily, the authority to make further determinations in accordance with the terms of the Paternity Act. Section 11 of the Act authorizes the court to make a determination of custody:

"The court may in such action to determine paternity *** provide for the guardianship of the child in the mother or in any other person or institution as authorized by that Act." (Ill. Rev. Stat. 1983, ch. 40, par. 1363.)

The statute does not impose a requirement that a party petition the court for custodial relief as a prerequisite to a determination of guardianship.

■ Defendant further argues that the circuit court's determination in its order of October 26, 1983, that "custody is not an issue in a paternity action and that custody remains with the natural mother pending any proper motions filed pursuant to Ill. Rev. Stats. [*sic*], Ch. 40, par. 601" necessarily presumes that an unwed mother has a custodial right superior to that of an unwed father, and that this presumption is unconstitutional according to the standard of *Stanley v. Illinois* (1972), 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208. We are not, however, compelled to read the trial court's statement that "custody remains with the natural mother" as an explication of a legal

presumption; rather, the context of the statement indicates a specific reference to the instant case. In other words, the term "natural mother" was not intended by the court as a reference to all natural mothers, but to plaintiff. The judgment, then, does not reflect a presumption favoring all unwed mothers over all unwed fathers under all circumstances. The court's statement is nothing more than a prudential determination that a natural mother who has in fact exercised custody of her four-year-old child from the child's birth should be allowed to maintain custody until the natural father, who has had no prior significant contact with the child and who has only recently admitted paternity, obtains, according to the procedures of the jurisdiction which has adjudged the issue of paternity, a declaration of the father's custodial rights. This determination is consistent both with common sensibilities of fairness and the public policy abhorring abductions and other unilateral removals of children undertaken to obtain custody awards. It was with the express intention of preventing abductions that both Illinois and Nevada enacted the Uniform Child Custody Jurisdiction Act (Ill. Rev. Stat. 1983, ch. 40, par. 2102(5); Nev. Rev. Stat. sec. 125A.020(5)). The Act forbids a State court from exercising jurisdiction when a proceeding concerning the custody of a child is pending in another State:

> "A court of this state shall not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with the Uniform Child Custody Jurisdiction Act *** unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons." Nev. Rev. Stat. sec. 125A.060(1).

> " 'Custody proceeding' includes proceedings in which a custody determination is one of several issues, such as an action for divorce or separation, and includes child neglect and dependency proceedings." Nev. Rev. Stat. sec. 125A.040(3).

Because the order of the circuit court of Madison County adjudging paternity was not, in itself, a final judgment, the circuit court retained its statutory authority to determine custody. The court possessed this authority at the time defendant absconded with the child on October 23, 1983, and exercised this authority by its order of October 26, 1983. The district court of Nevada was thus precluded from exercising jurisdiction over the cause, and the circuit court of Madison County was correct in declining to give full faith and credit to the Nevada decree. Defendant's frustration over his daughter's alleged living

conditions cannot justify his act of removing the child from Illinois. The judgment of contempt entered by the circuit court of Madison County is affirmed.

Affirmed.

KARNS and KASSERMAN, JJ., concur.